## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VLADIMIR GUSINSKY REVOCABLE TRUST, derivatively on behalf of KRAFT HEINZ COMPANY, | :    Civil Action No.    2:19-cv-549<br>:<br>: |
| Plaintiff, | : |
| v. | : |
| BERNARDO HEES, PAULO LUIZ ARAUJO BASILIO, DAVID H. KNOPF, GEORGE EL ZOGHBI, CHRISTOPHER R. SKINGER, VINCE GARLATI, ALEXANDRE BEHRING DA COSTA, JOHN T. CAHILL, GREGORY E. ABEL, TRACY BRITT COOL, FEROZ DEWAN, JEANNE P. JACKSON, JORGE PAULO LEMANN, JOHN C. POPE, MARCEL HERRMANN TELLES, ALEXANDRE VAN DAMME, AND MACKEY J. MCDONALD, | :<br>:<br>:<br>:<br>:<br>:    **JURY TRIAL DEMANDED**<br>:<br>:<br>:<br>: |
| Defendants, | : |
| and | : |
| KRAFT HEINZ COMPANY, | : |
| Nominal Defendant. | : |

### VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

1.      Plaintiff Vladimir Gusinsky Revocable Trust ("Plaintiff"), by and through its undersigned attorneys, hereby submits this Verified Shareholder Derivative Complaint (the "Complaint") for the benefit of nominal defendant  The Kraft Heinz Company ("Kraft Heinz" or the "Company") against certain members of its Board of Directors (the "Board") and executive officers seeking to remedy defendants' breaches of fiduciary duties and unjust enrichment from May 4, 2017 to the present (the "Relevant Period").  Plaintiff makes these allegations upon

personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon information and belief based on the investigation of undersigned counsel, which includes, without limitation: (a) review and analysis of public filings made by Kraft Heinz and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by Kraft Heinz, defendants (defined herein), and other related non-parties; (c) review of news articles, stockholder communications, and postings on Kraft Heinz's website concerning the Company's public statements; (d) pleadings, papers, and any documents filed with and publicly available from a related pending securities fraud class action captioned *Walling v. Kraft Heinz Company, et al.,* No. 2:19-cv-00214-MRH (W.D. Pa.) (the "Federal Securities Class Action"); and (e) review of other publicly available information concerning Kraft Heinz and the defendants.

## NATURE OF THE ACTION

2.  According to its public filings, Kraft Heinz manufactures and markets food and beverage products in the United States, Canada, Europe, and internationally. Its products include condiments and sauces, cheese and dairy products, meals, meats, refreshment beverages, coffee, and other grocery products.

3.  On February 21, 2019, defendants issued a press release announcing that the Company had been improperly accounting for the costs of products sold and that it recorded impairment charges of $15.4 billion to lower the carrying amount of goodwill in certain reporting units, primarily U.S. Refrigerated and Canada Retail, and certain intangible assets, primarily the Kraft natural cheese and Oscar Mayer cold cuts trademarks. The press release also announced Kraft Heinz's receipt of an SEC subpoena associated with its investigation into the Company's accounting policies, procedures, and internal controls and that the Company had

been operating with material weaknesses in its system of internal controls over financial reporting.

4.     On this news, Kraft Heinz share price fell approximately ***27.5%***, from $48.18 per share to $34.95 per share, erasing more than ***$16 billion*** of the Company's market capitalization.

5.     Kraft Heinz stock has still not recovered and currently trades at $32 per share.

6.     Throughout the Relevant Period, defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, defendants made false and/or misleading statements and/or failed to disclose that: (1) Defendants had been materially overstating the value of certain of the Company's important product lines; (2) Kraft Heinz's intangible assets, including goodwill, associated with, at least, its Kraft natural cheese, Oscar Mayer cold cuts, U.S. Refrigerated and Canadian retail businesses were materially impaired; (3) Defendants had been employing improper accounting policies, procedures, and associated with its procurement function, including, but not limited to, agreements, side agreements, and changes or modifications to its agreements with its vendors; (4) Defendants had been improperly accounting for the costs of products sold; (5) Kraft Heinz had been operating with material weaknesses in its internal controls over financial reporting, including those controls related to the accounting and disclosure of new accounting standards, its cost of products sold, its procurement function, the impairment of goodwill and the impairment of intangible assets; (6) Kraft Heinz's operating results were materially misstated, and Defendants' disclosures related thereto were materially false and misleading; (7) Kraft Heinz's financial statements contained material errors, were presented in violation of GAAP and were materially false and misleading; (8) the risk factor, Management's Discussion and Analysis of Financial Condition and Results of Operations

("MD&A") and internal control over financial reporting disclosures in filings Defendants made with the SEC were materially false and misleading; and (9) based on the foregoing, Defendants lacked a reasonable basis for their positive statements about Kraft Heinz's then-current business operations and future financial prospects.

7.     Accordingly, as a result of the defendants' breaches, the Company has been damaged.

**JURISDICTION AND VENUE**

8.     This Court has jurisdiction over the subject matter of this action under its federal question jurisdiction pursuant to 28 U.S.C. § 1331. This Court has exclusive jurisdiction pursuant to Section 27 of the Securities Exchange Act 15 U.S.C. § 78(aa) because this action asserts claims under 14(a) of the Exchange Act, 15 U.S.C. § 78(n)(a) and this Court also has supplemental jurisdiction over the non-federal claims asserted herein under 28 U.S.C. § 1367(a).

9.     This Court has personal jurisdiction over each of the Defendants because each defendants is either a corporation conducting business and maintaining operations in this District, or is an individual who is either present in this District for jurisdictional purposes, or has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

10.     Venue is proper in this District under 28 U.S.C. § 1391(a) because the Company maintains is principal executive offices in this District, and many of the acts charged herein, including the dissemination of materially false and misleading information, occurred in substantial part in this District.  Additionally, nominal defendant Kraft Heinz is headquartered in this district.

## THE PARTIES

11.     Plaintiff is a current shareholder of Kraft Heinz and has continuously held Kraft Heinz stock since July 2015.

12.     Nominal defendant Kraft Heinz is a Delaware corporation, with its principal executive offices at One PPG Place, Pittsburgh, Pennsylvania, 15222.  According to its public filings, Kraft Heinz manufactures and markets food and beverage products in the United States, Canada, Europe, and internationally.

13.     Defendant Bernardo Hees ("Hees") has served as the Company's Chief Executive Officer ("CEO") since July 2015.  On April 22, 2019, the Company announced that Hees would be stepping down from his position as CEO on June 30, 2019.  Defendant Hees is also a partner of 3G Capital Inc. ("3G Capital").

14.     Defendant Paulo Luiz Araujo Basilio ("Basilio") served as the Company's Executive Vice President ("EVP") and Chief Financial Officer ("CFO") from its formation in July 2015 until October 1, 2017 when he was appointed as the Company's Zone President of U.S. business.

15.     Defendant David H. Knopf ("Knopf") has served as the Company's CFO and EVP since October 1, 2017.  Defendant Knopf joined Kraft Heinz upon its formation in July 2015, initially serving as Vice President of Finance, Head of Global Budget & Business Planning, Zero-Based Budgeting, and Financial & Strategic Planning.  Previously, defendant Knopf held various roles at 3G Capital from 2013 to 2015.

16.     Defendant George El Zoghbi ("Zoghbi") served as the Company's Chief Operating Officer ("COO") of U.S. business from July 2015 until October 1, 2017 when he became a full-time Special Advisor to the Company working with the Board.

17.     Defendant Christopher R. Skinger ("Skinger") served as the Company's Vice President, Global Controller and Principal Accounting Officer from July 6, 2015 until June 18, 2018 when he resigned from the Company.

18.     Defendant Vince Garlati ("Garlati") has served as the Company's Global Controller and Principal Accounting Officer since June 18, 2018.

19.     Defendant Alexandre Behring da Costa ("Behring") has served as the Chairman of the Board since June 2013.

20.     Defendant John T. Cahill ("Cahill") has served as the Vice Chairman of the Board since July 2015.

21.     Defendant Gregory E. Abel ("Abel") has served as a director of the Company from June 2013.

22.     Defendant Tracy Britt Cool ("Cool") has served as a director of the Company from June 2013.

23.     Defendant Feroz Dewan ("Dewan") has served as a director of the Company from October 2016.  In addition, defendant Dewan served as a member of the Board's Audit Committee (the "Audit Committee") during the Relevant Period.

24.     Defendant Jeanne P. Jackson ("Jackson") has served as a director of the Company since October 2012.  In addition, defendant Jackson served as a member of the Audit Committee during the Relevant Period.

25.     Defendant Jorge Paulo Lemann ("Lemann") has served as a director of the Company since June 2013.

26.     Defendant John C. Pope ("Pope") has served as a director of the Company since July 2015.  In addition, defendant Pope served as the Chairman of the Audit Committee during

the Relevant Period.

27.     Defendant Marcel Herrmann Telles ("Telles") has served as a director of the Company since June 2013.  Upon Information and belief, defendant Telles is a citizen of Brazil.

28.     Defendant Alexandre Van Damme ("Van Damme") has served as a director of the Company since April 2018.

29.     Defendant Mackey J. McDonald ("McDonald") served as a director of the Company from July 2, 2015 until April 23, 2018.  In addition, defendant McDonald previously served as a member of the Audit Committee.

30.     Collectively, defendants Hees, Basilio, Knopf, Zoghbi, Skinger, Garlati, Behring, Cahill, Abel, Cool, Dewan, Jackson, Lemann, Pope, Telles, Van Damme, McDonald shall be referred to herein as "Defendants."

31.     Collectively, defendants Dewan, Jackson, Pope and McDonald and shall be referred to as the "Audit Committee Defendants."

### DEFENDANTS' DUTIES

32.     By reason of their positions as officers, directors, and/or fiduciaries of Kraft Heinz and because of their ability to control the business and corporate affairs of Kraft Heinz, Defendants owed Kraft Heinz and its shareholders fiduciary obligations of good faith, loyalty, and candor, and were and are required to use their utmost ability to control and manage Kraft Heinz in a fair, just, honest, and equitable manner.  Defendants were and are required to act in furtherance of the best interests of Kraft Heinz and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.  Each director and officer of the Company owes to Kraft Heinz and its shareholders the fiduciary duty to

exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

33.     Defendants, because of their positions of control and authority as directors and/or officers of Kraft Heinz, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.  Because of their advisory, executive, managerial, and directorial positions with Kraft Heinz, each of the Defendants had knowledge of material non-public information regarding the Company.

34.     To discharge their duties, the officers and directors of Kraft Heinz were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company.  By virtue of such duties, the officers and directors of Kraft Heinz were required to, among other things:

> (a) Exercise good faith to ensure that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of their business;
>
> (b) Exercise good faith to ensure that the Company was operated in a diligent, honest and prudent manner and complied with all applicable federal and state laws, rules, regulations and requirements, and all contractual obligations, including acting only within the scope of its legal authority; and
>
> (c) When put on notice of problems with the Company's business practices and operations, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence.

35.     Pursuant to the Audit Committee's Charter, the members of the Audit Committee are required, *inter alia*, to:

> (a) Review and discuss with management any analyses or other written communications prepared by management setting forth significant financial reporting issues and judgments made in connection with the preparation of the financial statements, including analyses of the effects of alternative GAAP methods on the financial statements;

(b) Review and discuss with management the Company's critical accounting policies and practices;

(c) Review and discuss with management major issues regarding accounting principles and financial statement presentations, including any significant changes in the Company's selection or application of accounting principles, and major issues as to the adequacy of the Company's internal controls over financial reporting and safeguarding Company assets, and any special steps adopted in light of material control deficiencies;

(d) Recommend to the Board whether the Company's consolidated financial statements should be included in the Company's annual report on Form 10-K;

(e) Prepare and approve the Committee's annual report to stockholders for inclusion in the Company's annual proxy statement;

(f) Review disclosures made by the Company's principal executive officer(s) and principal financial officer(s) regarding compliance with their certification obligations under the Sarbanes-Oxley Act of 2002 and the rules promulgated thereunder, including the Company's disclosure controls and procedures and systems of internal control over financial reporting, and evaluations thereof;

(g) Review and discuss earnings press releases and will generally discuss the type and presentation of (a) information to be included in earnings press releases (in particular any use of "pro forma" or "adjusted" non-GAAP information) and (b) financial information and earnings guidance provided to analysts and rating agencies;

(h) Review and discuss with management the quality and adequacy of the Company's financial reporting processes, systems of internal control over financial reporting and safeguarding of Company assets and disclosure controls and procedures, including whether there are (a) any significant deficiencies in the design or operation of such processes, controls and procedures, (b) any material weaknesses in such processes, controls and procedures, (c) any corrective action taken or proposed to be taken with regard to significant deficiencies and weaknesses, (d) any fraud involving management or other employees with a significant role in such processes, controls and procedures, and (e) any significant fraud involving management or any Company employee;

(i) Annually, meet with management to review (a) the application and administration of all director and employee codes of conduct and ethics adopted by the Company (collectively, the "Codes") and the procedures for identifying, pursuing and investigating any alleged violation of the Codes, and (b) the implementation and effectiveness of the Company's programs and strategies designed to foster compliance with the Codes;

(j) Review and discuss the Company's guidelines and policies with respect to risk assessment and risk management, including the Company's major financial risk exposures and the steps that have been taken to monitor and control such exposures;

(k) Review and discuss with management the Company's disclosures within the footnotes to the Financial Statements and under "Management's Discussion and Analysis of Financial Condition and Results of Operations";

36.     Additionally, Kraft Heinz has established a "The Kraft Heinz Company Employee Code of Conduct", which states, *inter alia*:

**Compliance with all applicable laws, regulations and Company policies**

The Company is subject to federal, national, state, provincial, local, and international laws and regulations. We all must comply with all applicable laws and regulations

**Adherence to Highest Ethical Standards**

Each of us must adhere to the highest ethical standards of conduct in all of our business activities and must act in a manner that enhances the Company's reputation in the business community and with the public. Integrity is, and must continue to be, the basis of all our business relationships.

\*     \*     \*

**Our Company and Shareholders**

**We Maintain the Integrity, Accuracy and Reliability of Our Books, Records and Controls**

***We are committed to maintaining the Company's financial books and business records with the highest degree of accuracy, completeness and integrity.***[1]   We rely on our financial books and business records to make smart, timely business decisions. We also recognize that our investors rely on our books and records to get an accurate picture of the Company's condition.

\*     \*     \*

Do What's Right!

---

[1]      All emphases added, unless otherwise noted.

37.     Further, Kraft Heinz has established a "Code of Business Conduct and Ethics for Non-Employee Directors", which states, *inter alia*:

> The Kraft Heinz Company (the "Company") is committed to the highest ethical standards in the operation of its global business. The Board of Directors (the "Board") acknowledges its responsibility for promoting an ethical culture through the actions of Board members and the effective oversight of the Company's compliance programs, policies and procedures.
>
> In furtherance of its responsibilities, the Board is committed to the following:
>
> **Codes of Conduct, Laws and Policies**
>
> Observing the basic principles set forth in the Company's Code of Business Conduct ("Code of Conduct"), including acting ethically at all times, adhering to the applicable codes, standards, policies and procedures adopted by the Company and complying with all laws, regulations and rules that apply to the Company's business affairs. The Board has approved the Code of Conduct and hereby affirms its commitment to monitor the Company's compliance programs, standards, policies, codes, procedures and activities in furtherance of the Code of Conduct.
>
> **Ethical Culture**
>
> Promoting an ethical culture that respects and values all employees and encourages compliance with all laws and policies of the Company and creating accountability for violations of the laws and policies. The Board understands its responsibility for setting the "tone at the top" and will observe the highest ethical standards by acting with honesty and integrity.
>
> **Performance of Duties**
>
> ***Acting in the best interests of the Company and its shareholders***, including acting responsibly with due care and diligence in the performance of its duties.

## SUBSTANTIVE ALLEGATIONS

**A.     Company Background**

38.     According to its public filings, Kraft Heinz manufactures and markets food and beverage products in the United States, Canada, Europe, and internationally.  It sells its products through its own sales organizations, as well as through independent brokers, agents, and distributors to convenience stores, drug stores, value stores, bakeries, pharmacies, mass merchants, club stores, foodservice distributors and institutions, including hotels, restaurants,

hospitals, health care facilities, and certain government agencies, as well as to chain, wholesale, cooperative, and independent grocery accounts. Kraft Heinz is one of the largest food and beverage companies in the world with a portfolio of brands that include Heinz, Kraft, Oscar Mayer, Philadelphia, Planters, Velveeta, Lunchables, Maxwell House, Capri Sun, and Ore-Ida. The Kraft businesses manufacture and market an extensive line of food beverage products, including cheese, meats, refreshment beverages, coffee, packaged dinners, refrigerated meals, snack nuts, dressings, ketchup, condiments and sauces, frozen food, soups, beans and pasta meals, infant nutrition and other grocery products, primarily in the U.S. and Canada. The company was formerly known as H.J. Heinz Holding Corporation and changed its name to The Kraft Heinz Company in July 2015 when Kraft merged with and into Heinz (the "Merger"). The Kraft Heinz Company was founded in 1869 and is headquartered in Pittsburgh, Pennsylvania.

39.     In June 2013, H. J. Heinz Company was acquired by Heinz. At that time, Heinz was controlled by Berkshire Hathaway Inc. ("Berkshire Hathaway") and an affiliate of 3G Capital, 3G Special Situations Fund III, L.P. ("3G Special Situations Fund"), each of whom beneficially owned approximately 50% of Heinz common stock.

40.     Just prior to the Merger, 3G Special Situations Fund transferred all of its Heinz common shares to 3G Global Food Holdings L.P. ("3G Global Food Holdings"), an affiliate of 3G Capital. Throughout the Relevant Period, Berkshire Hathaway and 3G Global Food Holdings each owned approximately 25% of Kraft Heinz outstanding common shares and were the largest beneficial owners of Kraft Heinz common stock.

41.     Berkshire Hathaway is a holding company whose subsidiaries are engaged in a number of diverse business activities including insurance businesses, a freight rail transportation business and a group of utility and energy generation and distribution businesses. 3G Capital is a

Brazilian-American, private equity firm known for achieving significant cost reduction in companies under its management by, among other things, implementing zero-based budgeting at its portfolio companies. Zero-based budgeting is a process whereby budgets are determined only after all anticipated expenses in a given period have been justified as being necessary, irrespective of what the budget may have been in a prior period.

42. After the Merger, Kraft Heinz was led by a group of executives that were, or had been, partners or formers employees of 3G Capital. Defendant Hees, a partner at 3G Capital since July 2010, became CEO of Kraft Heinz upon the closing of the Merger after serving as CEO of Heinz since its formation in June 2013. Likewise, defendant Basilio, a partner of 3G Capital since July 2012, became EVP and CFO of Kraft Heinz upon the closing of the Merger after previously serving as CFO of Heinz since its formation in June 2013.

43. On October 1, 2017, defendant Knopf, then only 29 years of age, assumed defendant Basilio's responsibilities and became EVP and CFO of the Company. Defendant Knopf has been a partner of 3G Capital since July 2012 and held various roles at 3G Capital from 2013 to 2015.

44. Consistent with 3G Capital's philosophy, Defendants adopted a series of cost reduction initiatives after the Merger when integrating the operations of Kraft and Heinz. Prior to the beginning of Relevant Period, these cost-cutting initiatives helped lower costs and drive increases in highly leveraged Kraft Heinz's profitability even though the Company's sales were declining.

45. By the beginning of the Relevant Period, however, Defendants knew or recklessly ignored that their belt-tightening measures had run their course, depleted the Company of valuable resources, marginalized its internal controls, and left Kraft Heinz's iconic brands badly

damaged.

46.     During the Relevant Period, Kraft Heinz suffered an impairment in the value of its brands when they experienced significant sales declines and market share losses as consumers shifted to organic and lower priced private label offerings.  This dynamic left the Company with little pricing power and commoditized its product categories.  While the Company's major brands were suffering sales declines and market share losses, the Company was also experiencing significant supply chain issues and cost inflation.  The combination of these factors severely slashed the product margins and profitability of the Company's major brands, causing an impairment in their value during the Relevant Period.

47.     For example, during the Relevant Period, Defendants knew the value of Kraft Heinz's Oscar Meyer cold cut trademarks were impaired when that business suffered sales declines and market share losses due, in part, to Defendants reluctance to invest the resources needed for product distribution and new equipment.  Similarly, Defendants knew the value of Kraft Heinz's Kraft cheese trademarks were impaired when that business suffered sales declines and market share losses to aggressively priced private-label offerings and cheaper brands sold by e-commerce retailers.

48.     Similarly, Defendants knew, or recklessly ignored, that the goodwill associated with Kraft Heinz Canadian retail business was impaired when year-over year sales for that business had been falling and its operations were suffering from product discontinuations, higher input costs and higher promotional expenses.

49.     In October 2018, unbeknownst to the public, Kraft Heinz received a subpoena from the SEC associated with its investigation into Kraft Heinz's accounting policies, procedures, and internal controls over financial reporting.

50.     In November 2018, Defendants agreed to sell the Company's Canadian natural cheese business to Parmalat S.p.A for approximately $1.23 billion.

51.     Then, on February 21, 2019, Defendants issued a press release announcing that the Company had been improperly accounting for the costs of products sold and that it recorded impairment charges of $15.4 billion to lower the carrying amount of goodwill in certain reporting units, primarily U.S. Refrigerated and Canada Retail, and certain intangible assets, primarily the Kraft natural cheese and Oscar Mayer cold cuts trademarks.  The press release also announced Kraft Heinz's receipt of an SEC subpoena associated with its investigation into the Company's accounting policies, procedures, and internal controls and that the Company had been operating with material weaknesses in its system of internal controls over financial reporting.

52.     On this news, Kraft Heinz share price fell approximately 27.5%, from $48.18 per share to $34.95 per share, erasing more than $16 billion of the Company's market capitalization.

53.     Prior to the disclosure of the adverse facts detailed above, in August 2018, 3G Global Food Holdings sold more than $1.2 billion of Kraft Heinz common stock at an artificially inflated price.

**B.**     **Defendants' False and Misleading Statements**

54.     After the market closed on May 3, 2017, Defendants issued a press release announcing the Company's financial results for the 2017 first quarter, the period ended April 1, 2017.  The press release contained materially false and misleading financial data, and falsely represented that net income attributable to common shareholders totaled $893 million during the quarter.

- 15 -

55.     Later that day, Defendants held a conference call with analysts and investors to discuss the Company's operations and earnings release.  During the conference call, defendants Hees, Basilio and Zoghbi made materially false and misleading statements associated with the Company's operating results and/or its brands, Kraft cheese, Oscar Mayer meat and Canadian businesses.

56.     On May 4, 2017, Defendants caused the Company to file with the SEC its Form 10-Q for the quarter ended April 1, 2017 (the "Q1 2017 Form 10-Q") signed by defendants Basilio and Skinger. The Q1 2017 Form 10-Q contained materially false and misleading financial statements, MD&A, risk factor and disclosure control and internal control disclosures.

57.     In addition, pursuant to the Sarbanes-Oxley Act of 2002, the Q1 2017 Form 10-Q contained signed certifications ("SOX Certifications") by defendants Hees and Basilio, stating that the financial information contained in the Form 10-Q was accurate, and that any material changes to the Company's internal control over financial reporting were disclosed.  The SOX Certifications set forth:

I, [Bernardo Hees/Paulo Basilio], certify that:

1.  I have reviewed this Quarterly Report on Form 10-Q for the period ended April 1, 2017 of The Kraft Heinz Company;

2.  Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.  Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4.  The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the

registrant and have:

(a) Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

(b) Designed such internal controls over financial reporting, or caused such internal controls over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

(c) Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period cove`red by this report based on such evaluation; and

(d) Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5. The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

(a) All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

(b) Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

\*    \*    \*

I, [Bernardo Hees, Chief Executive Officer/Paulo Basilio, Executive Vice President and Chief Financial Officer] of The Kraft Heinz Company (the "Company"), hereby certify that, pursuant to Section 906 of the Sarbanes-Oxley Act of 2002, 18 U.S.C. Section 1350, to my knowledge:

(1) The Company's Quarterly Report on Form 10-Q for the period ended April 1, 2017 (the "Form 10-Q") fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934; and

(2) The information contained in the Form 10-Q fairly presents, in all material respects, the financial condition and results of operations of the Company.

58.     On August 3, 2017, Defendants issued a press release announcing the Company's financial results for the 2017 second quarter, the period ended July 1, 2017.  The press release contained materially false and misleading financial data and falsely represented that net income attributable to common shareholders totaled $1,159 million during the quarter.

59.     Later that day, Defendants held a conference call with analysts and investors to discuss the Company's operations and earnings release.  During the conference call, defendants Hees, Basilio and Zoghbi made materially false and misleading statements associated with Kraft Heinz's operating results and/or its brands, Kraft cheese, Oscar Mayer meat and Canadian businesses.

60.     On August 4, 2017, Defendants caused the Company to file with the SEC its Form 10-Q for the quarter ended July 1, 2017 (the "Q2 2017 Form 10-Q") signed by defendants Basilio and Skinger. The Q2 2017 Form 10-Q contained false and misleading financial statements, MD&A, risk factor and disclosure control and internal control disclosures. In addition, the Q2 2017 Form 10-Q contained SOX Certifications, signed by defendants Hees and Basilio, which were substantially similar to those set forth above.

61.     On August 9, 2017, Defendants caused the Company to file a prospectus with the SEC offering to the public $1.5 billion aggregate principal amount of floating rate senior notes. The prospectus incorporated by reference Kraft Heinz's materially false and misleading Q1 2017 Form 10-Q and Q2 2017 Form 10-Q.

62.     On September 8, 2017, Defendants issued a press release announcing the following management changes effective October 1, 2017: (a) the appointment of defendant Paulo Basilio as U.S. Zone President responsible for all facets of the Company's U.S. business; (b) the appointment of defendant Knopf as EVP and CFO; (c) the transition of defendant Zoghbi from COO of the Company's U.S. business to Strategic Advisor role working with the Kraft Heinz Board of Directors, defendant Hees and defendant Basilio.

63.     On November 1, 2017, Defendants issued a press release announcing the Company's financial results for the 2017 third quarter, the period ended September 30, 2017. The press release contained materially false and misleading financial data, and falsely represented that net income attributable to common shareholders totaled $944 million during the quarter.

64.     Later that day, Defendants held a conference call with analysts and investors to discuss the Company's operations and earnings release. During the conference call, defendants Hees, Basilio, Knopf and Zoghbi made materially false and misleading statements associated with Kraft Heinz's operating results and/or its brands, Kraft cheese, Oscar Mayer meat and Canadian businesses.

65.     On November 6, 2017, Defendants caused the Company to filed a Form 8-K (the "November 2017 Form 8-K") with the SEC announcing that, on October 31, 2017, the Audit Committee concluded that financial statements included in the Q1 2017 Form 10-Q and Q2 2017 Form 10-Q "should not be relied upon due to the misstatement in adopting new Accounting Standards Update 2016-15 ("ASU 2016-15")." ASU 2016-15 requires companies to record cash receipts from beneficial interests within trade receivable securitization programs as cash provided from investing activities in the statement of cash flows.

- 19 -

66.    The November 2017 Form 8-K stated that the Company would file an amended Q1 2017 Form 10-Q and Q2 2017 Form 10-Q with the SEC to "correctly classify certain items in our cash flow statements," which Defendants represented "[did] not reflect a change in our underlying business and do not impact any other components of our consolidated financial statements, including the income statement, or balance sheet, including cash and cash equivalents."

67.    The November 2017 Form 8-K also noted that failure of an existing control relating to the adoption and disclosure of new accounting standards constituted a material weakness in the Company's internal control over financial reporting and that the Company's disclosure controls and procedures were not effective, stating, in pertinent part, as follows:

> In reevaluating the effectiveness of the design and operation of our disclosure controls and procedures as of April 1, 2017 and July 1, 2017, and as part of our assessment as to whether or not there were any changes during the third quarter ended September 30, 2017 that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting, we have concluded that the ASU 2016-15 adoption misstatement, as described above, was primarily the result of a failure of an existing control surrounding the adoption and disclosure of new accounting standards. *We have concluded that this control failure constitutes a material weakness in internal control over financial reporting and that our disclosure controls and procedures were not effective*. The remediation of this material weakness will primarily include steps to improve the validation and documentation of new accounting standards' impacts and communication with the appropriate individuals, including the importance of adherence to the internal control structure that is in place regarding the adoption of new accounting standards and guidance. We plan to have these remediation steps in place during our 2017 fiscal year, but will allow for testing to determine operating effectiveness before concluding on remediation.

68.    On November 7, 2017, Defendants caused the Company to file an amended Q1 2017 Form 10-Q and Q2 2017 Form 10-Q with the SEC, each signed by defendants Knoft and Skinger, to correct the items noted above. The amended Q1 2017 Form 10-Q and Q2 2017 Form 10-Q each contained materially false and misleading financial statements, MD&A, risk factor

and disclosure control and internal control disclosures, as well as SOX Certifications, signed by defendants Hees and Knopf, which were substantially similar to those set forth above.

69.     On November 7, 2017, Defendants caused the Company to file with the SEC its Form 10-Q for the quarter ended September 30, 2017 (the "Q3 2017 Form 10-Q") signed by defendants Knopf and Skinger.  The Q3 2017 Form 10-Q contained false and misleading financial statements, MD&A, risk factor and disclosure control and internal control disclosures, as well as SOX Certifications, signed by defendants Hees and Knopf, which were substantially similar to those set forth above.

70.     On February 15, 2018, Defendants held a conference call with analysts and investors to update the Company's post-integration operations. During the conference call, defendant Hees made materially false and misleading statements associated with Kraft Heinz's brands, Kraft cheese and/or Oscar Mayer meat businesses.

71.     On February 16, 2018, Defendants issued a press release announcing the Company's financial results for the 2017 fourth quarter and fiscal year end, the periods ended December 30, 2017.  The press release contained materially false and misleading financial data and falsely represented that net income attributable to common shareholders totaled $8,003 million and $10,999 million during the fourth quarter and fiscal year ended December 30, 2017, respectively.

72.     Later that day, Defendants held a conference call with analysts and investors to discuss the Company's operations and earnings release.  During the conference call, defendants Hees, Basilio, Knopf and Zoghbi made materially false and misleading statements associated with Kraft Heinz's operating results and/or its brands, Kraft cheese, Oscar Mayer meat and Canadian businesses.

73.     On February 16, 2018, Defendants caused the Company to file with the SEC its Form 10-K for the year ended December 30, 2017 (the "2017 Form 10-K") signed by defendants Hees, Knopf, Skinger, Behring, Cahill, Abel, Cool, Dewan, Jackson, Lemann, McDonald, Pope and Telles. The 2017 Form 10-K contained materially false and misleading financial statements, MD&A, risk factor and disclosure control and internal control disclosures, as well as SOX Certifications, signed by defendants Hees and Knopf, which were substantially similar to those set forth above.

74.     On May 2, 2018, Defendants issued a press release announcing the Company's financial results for the 2018 first quarter, the period ended March 31, 2018.  The press release contained materially false and misleading financial data and falsely represented that net income attributable to common shareholders totaled $993 million during the quarter.

75.     Later that day, Defendants held a conference call with analysts and investors to discuss the Company's operations and earnings release.  During the conference call, defendants Hees and Knopf made false and misleading statements associated with Kraft Heinz's operating results and/or its brands, Kraft cheese, Oscar Mayer meat and Canadian businesses.

76.     On May 3, 2018, Defendants caused the Company to file with the SEC its Form 10-Q for the quarter ended March 31, 2018 (the "Q1 2018 Form 10-Q"), signed by defendants Knopf and Skinger.  The Q1 2018 Form 10-Q contained materially false and misleading financial statements, MD&A, risk factor and disclosure control and internal control disclosures, as well as SOX Certifications, signed by defendants Hees and Knopf, which were substantially similar to those set forth above.

77.     On June 6, 2018, Defendants caused the Company to file a prospectus with the SEC offering to the public $3.0 billion aggregate principal amount of senior notes.  The

prospectus incorporated by reference Kraft Heinz's materially false and misleading 2017 Form 10-K and Q1 2018 Form 10-Q.

78.     On June 6, 2018, Defendants caused the Company to file a Form 8-K with the SEC announcing that defendant Skinger, the Company's controller and principal accounting officer, left the Company "*for personal reasons to pursue a new career opportunity outside of Chicago*" and that defendant Garlati would succeed defendant Skinger as the Company's principal accounting officer and Global Controller effective June 18, 2018.

79.     On August 3, 2018, Defendants issued a press release announcing the Company's financial results for the 2018 second quarter, the period ended June 30, 2018.  The press release contained materially false and misleading financial data and falsely represented that net income attributable to common shareholders totaled $756 million during the quarter.

80.     Later that day, Defendants held a conference call with analysts and investors to discuss the Company's operations and earnings release.  During the conference call, defendants Hees, Basilio and Knopf made materially false and misleading statements associated with Kraft Heinz's operating results and/or its brands, Kraft cheese, Oscar Mayer meat and Canadian businesses.

81.     On August 3, 2018, Defendants caused the Company to file with the SEC its Form 10-Q for the quarter ended June 30, 2018 (the "Q2 2018 Form 10-Q") signed by Defendants Knopf and Garlati. The Q2 2018 Form 10-Q contained materially false and misleading financial statements, MD&A, risk factor and disclosure control and internal control disclosures, as well as SOX Certifications, signed by defendants Hees and Knopf, which were substantially similar to those set forth above.

82.     On September 5, 2018, Defendants presented at the Barclays Global Consumer

Staples Conference. During the conference call, defendant Hees made materially false and misleading statements associated with Kraft Heinz's growth, brands, and meat business.

83. On November 1, 2018, Defendants issued a press release announcing the Company's financial results for the 2018 third quarter, the period ended September 29, 2018. The press release contained materially false and misleading financial data and falsely represented that net income attributable to common shareholders totaled $630 million during the quarter.

84. Later that day, Defendants held a conference call with analysts and investors to discuss the Company's operations and earnings release. During the conference call, defendants Hees, Basilio and Knopf made materially false and misleading statements associated with Kraft Heinz's operating results and/or its brands, Kraft cheese and Canadian businesses.

85. On November 2, 2018, Defendants caused the Company to file with the SEC its Form 10-Q for the quarter ended September 29, 2018 (the "Q3 2018 Form 10-Q") signed by defendants Knopf and Garlati. The Q3 2018 Form 10-Q contained materially false and misleading financial statements, MD&A, risk factor and disclosure control and internal control disclosures, as well as SOX Certifications, signed by defendants Hees and Knopf, which were substantially similar to those set forth above.

86. The statements referenced above were materially false and misleading when made because they misrepresented and failed to disclose the following adverse facts, which were known to Defendants or recklessly disregarded by them as follows:

(a) that Defendants had been materially overstating the value of certain of the Company's important product lines;

(b) that Kraft Heinz's intangible assets, including goodwill, associated with, at least, its Kraft natural cheese, Oscar Mayer cold cuts, U.S. Refrigerated and Canadian retail

- 24 -

businesses were materially impaired;

(c)  that Defendants had been employing improper accounting policies, procedures, and associated with its procurement function, including, but not limited to, agreements, side agreements, and changes or modifications to its agreements with its vendors;

(d)  that Defendants had been improperly accounting for the costs of products sold;

(e)  that Kraft Heinz had been operating with material weaknesses in its internal controls over financial reporting, including those controls related to the accounting and disclosure of new accounting standards, its cost of products sold, its procurement function, the impairment of goodwill and the impairment of intangible assets;

(g)  that Kraft Heinz's operating results were materially misstated, and Defendants' disclosures related thereto were materially false and misleading;

(h)  that Kraft Heinz's financial statements contained material errors, were presented in violation of GAAP and were materially false and misleading;

(i)  that the risk factor disclosures in filings Defendants made with the SEC were materially false and misleading;

(j)  that the MD&A disclosures in filings Defendants made with the SEC were materially false and misleading;

(k)  that Defendants' representations about Kraft Heinz's disclosure controls and internal control over financial reporting in filings with the SEC were materially false and misleading;

(l)     that the SOX Certifications issued by defendants Hees, Basilio and Knopf on Kraft Heinz's disclosure controls and internal controls over financial reporting were materially false and misleading; and

(m)     that based on the foregoing, Defendants lacked a reasonable basis for their positive statements about Kraft Heinz's then-current business operations and future financial prospects.

## C.     The Truth Begins to Emerge

87.     After the market closed on February 21, 2019, Defendants caused the Company to file with the SEC a Form 8-K announcing goodwill and intangible asset impairments during the 2018 fourth quarter of ***$7.1 billion*** and ***$8.3 billion***, respectively.   The Form 8-K noted, in pertinent part:

> During the fourth quarter, as part of the Company's normal quarterly reporting procedures and planning processes, the Company concluded that, based on several factors that developed during the fourth quarter, the fair values of certain goodwill and intangible assets were below their carrying amounts. As a result, ***the Company recorded non-cash impairment charges of $15.4 billion to lower the carrying amount of goodwill in certain reporting units, primarily U.S. Refrigerated and Canada Retail, and certain intangible assets, primarily the Kraft and Oscar Mayer trademarks. These charges resulted in a net loss attributable to common shareholders of $12.6 billion and diluted loss per share of $10.34.***

88.     The Form 8-K also disclosed that the SEC was investigating the Company's accounting practices and policies and that Defendants had been improperly accounting for the costs of products sold, stating, in pertinent part, as follows:

> The Company received a subpoena in October 2018 from the U.S. Securities and Exchange Commission (the "SEC") associated with an investigation into the Company's procurement area, more specifically the Company's accounting policies, procedures, and internal controls related to its procurement function, including, but not limited to, agreements, side agreements, and changes or modifications to its agreements with its vendors.
>
> Following this initial SEC document request, the Company together with external

- 26 -

counsel launched an investigation into the procurement area. ***In the fourth quarter of 2018, as a result of findings from the investigation, the Company recorded a $25 million increase to costs of products sold as an out of period correction as the Company determined the amounts were immaterial to the fourth quarter of 2018 and its previously reported 2018 and 2017 interim and year to date periods***. *Additionally*, ***the Company is in the process of implementing certain improvements to its internal controls to mitigate the likelihood of this occurring in the future*** and has taken other remedial measures. The Company continues to cooperate fully with the U.S. Securities and Exchange Commission.

At this time, the Company does not expect the matters subject to the investigation to be material to its current period or any prior period financial statements.

89.     On this news, the price of Kraft Heinz common stock declined approximately ***27.5%***, from $48.18 per share to $34.95 per share, erasing more than ***$16 billion*** of the Company's market capitalization.

90.     Kraft Heinz stock has still not recovered and currently trades at $32 per share.

91.     As a result of Defendants' materially false and/or misleading statements, and/or omissions alleged herein, Kraft Heinz common stock traded at artificially inflated prices during the Relevant Period. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

92.     Accordingly, as a result of the defendants' breaches, the Company has been damaged.

**D.     3G Capital's Insider Sales**

93.     3G Capital and its affiliates including 3G Global Food Holdings, L.P. and 3G Capital Ltd., was a controlling shareholder of Kraft Heinz and had access to material adverse non-public information.

94.     3G Capital, and its affiliates (including 3G Global Food Holdings, LP, 3G Capital Partners II, LP, 3G Capital Partner, Ltd. and HK 318 LP) participated in 3G's sales of Kraft

Heinz stock in August 2018.

95.     Collectively, these entities sold $1.2 billion in Kraft Heinz stock (over 13% of its investment in Kraft Heinz expressed in dollars), and thereby avoided $600 million in losses when Kraft Heinz stock price collapsed upon disclosure of the write down.

## DERIVATIVE AND DEMAND ALLEGATIONS

96.     Plaintiff brings this action derivatively in the right and for the benefit of Kraft Heinz to redress the breaches of fiduciary duty and other violations of law by Defendants.

97.     Plaintiff will adequately and fairly represent the interests of Kraft Heinz and its shareholders in enforcing and prosecuting its rights.

98.     The Board currently consists of the following eleven (11) directors: defendants Behring, Cahill, Abel, Cool, Dewan, Jackson, Lemann, Pope, Telles, Van Damme and Zoghbi. Plaintiff has not made any demand on the present Board to institute this action because such a demand would be a futile, wasteful and useless act, for the following reasons.

99.     A majority of the directors lack independence from demonstrably interested directors, rendering them incapable of impartially considering a demand to commence and vigorously prosecute this action. Specifically,

   (a) According to the Company's Proxy Statement filed with the SEC on Form DEF 14A on March 2, 2018, Defendants have admitted that defendant Cahill is not independent;

   (b) According to the Company's Proxy Statement filed with the SEC on Form DEF 14A on March 2, 2018, Defendants have admitted that defendant Zoghbi is not independent;

   (c) Defendants Behringer, Lemann, and Telles are co-founders of 3G Capital, who is alleged herein to have sold Company stock at inflated values while in possession of material, adverse, non-public information; and

   (d) Defendant Van Damme previously served as a director of Burger King Worldwide, Inc. while it was privately owned by 3G Capital and currently

- 28 -

serves as director of Anheuser-Busch InBev which 3G Capital also controls through Board designees and their 22.6% ownership stake;

(e) Defendants Abel and Cool are employees of Berkshire Hathaway which is a major partner with 3G Capital in investments other than Kraft Heinz and whose chairman Warren Buffett has publicly stated that he wants Berkshire Hathaway to do more deals with 3G Capital.

100. Demand is also excused as to a majority of directors because they face a substantial likelihood of liability for their their conduct as described herein. Specifically,

(a) At various times during the Relevant Period, defendants Dewan, Jackson, Pope and McDonald served as members of the Audit Committee. Pursuant to the Company's Audit Committee Charter, the members of the Audit Committee were and are responsible for, *inter alia*, reviewing the Company's annual and quarterly financial reports and reviewing the integrity of the Company's internal controls. Defendants Dewan, Jackson, Pope and McDonald breached their fiduciary duties of due care, loyalty, and good faith, because the Audit Committee, *inter alia*, allowed or permitted the Company to disseminate false and misleading statements in the Company's SEC filings and other disclosures and caused the above-discussed internal control failures. Therefore, defendants Dewan, Jackson, Pope and McDonald each face a substantial likelihood of liability for their breach of fiduciary duties and any demand upon them is futile; and

(b) Defendants Behring, Cahill, Abel, Cool, Dewan, Jackson, Lemann, Pope and Telles (a majority of the Board) signed the false and misleading 2007 Form 10-K. The 2007 Form 10-K was false and misleading because (among other things) it misreported the Company's earnings and financial results and made false and misleading statements regarding the Company's internal controls. Therefore, Behring, Cahill, Abel, Cool, Dewan, Jackson, Lemann, Pope and Telles each face a substantial likelihood of liability for their breach of fiduciary duties and any demand upon them is futile.

## COUNT I

## AGAINST ALL DEFENDANTS FOR BREACH OF FIDUCIARY DUTY FOR DISSEMINATING FALSE AND MISLEADING INFORMATION

101. Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

102. As alleged in detail herein, each of the Defendants (and particularly the Audit

Committee Defendants) had a duty to ensure that Kraft Heinz disseminated accurate, truthful and complete information to its shareholders.

103.    As alleged herein, each of the Defendants had a fiduciary duty to, among other things, exercise good faith to ensure that the Company's financial statements were prepared in accordance with GAAP, and, when put on notice of problems with the Company's business practices and operations, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence.

104.    Defendants violated their fiduciary duties of loyalty, and good faith by causing or allowing the Company to disseminate to Kraft Heinz shareholders materially misleading and inaccurate information through, inter alia, SEC filings and other public statements and disclosures as detailed herein.  These actions could not have been a good faith exercise of prudent business judgment.

105.    As a direct and proximate result of Defendants' foregoing breaches of fiduciary duties, the Company has suffered significant damages, as alleged herein.

## COUNT II

### AGAINST ALL DEFENDANTS FOR UNJUST ENRICHMENT

106.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

107.    By their wrongful acts and omissions, the Defendants were unjustly enriched at the expense of and to the detriment of Kraft Heinz.

108.    Further, defendants Behringer, Lemann, Telles, Hees, Basilio, and Knopf, due to their employment relationship with 3G Capital stand to benefit from 3G Capital's illicit proceeds received from 3G Capital's insider sales.

109.    Plaintiff, as a shareholder and representative of Kraft Heinz, seeks restitution from these Defendants, and each of them, and seeks an order of this Court disgorging all profits, benefits and other compensation obtained by these Defendants, and each of them, from their wrongful conduct and fiduciary breaches.

## COUNT III

### AGAINST HEES, BASILIO, KNOPF, ZOGHBI, SKINGER, AND GARLATI FOR CONTRIBUTION UNDER SECTIONS 10(B) AND 21D OF THE EXCHANGE ACT

110.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

111.    Defendants Hees, Basilio, Knopf, Zoghbi, Skinger, and Garlati are named defendants in the Federal Securities Class Action.

112.    This claim is brought derivatively on behalf of the Company against each of the Class Action Individual Defendants for contribution and indemnification.

113.    Kraft Heinz is named as a defendant in the Federal Securities Class Action filed in this Court, asserting claims under the federal securities laws for *inter alia*, violations of Sections 10(b), 20(a) of the Exchange Act and Sections 11, 12(a)(2) and 15 of the Securities Act. If the Company is found liable for violating the federal securities laws, the Company's liability will arise, in whole or in part, from the intentional, knowing, or reckless acts or omission of some or all of the Defendants as alleged herein. The Company is entitled to receive contribution from those Defendants in connection with the Federal Securities Class Action against the Company currently pending in this Court.

114.    Hees, Basilio, Knopf, Zoghbi, Skinger, and Garlati, as directors and officers, and otherwise, had the power and/or ability to, and did, directly or indirectly control or influence the Company's general affairs, including the content of public statements about TrueCar and

had the power and/or ability directly or indirectly to control or influence the specific corporate statements and conduct that violated section 10(b) of the Exchange Act and SEC Rule 10b-5 as alleged above.

115. In addition, Hees, Basilio, Knopf, Zoghbi, Skinger, and Garlati are liable under 15 U.S.C. §78j(b), pursuant to which there is a private right of action for contribution, and Section 21D of the Exchange Act, 15 U.S.C. §78u-4, which governs the application of any private right of action for contribution asserted pursuant to the Exchange Act.

116. Accordingly, Kraft Heinz is entitled to all appropriate contribution or indemnification from the Class Action Individual Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

A. Against all Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of Defendants' breaches of fiduciary duties;

B. Directing Kraft Heinz to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect the Company and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote resolutions for amendments to the Company's By-Laws or Articles of Incorporation and taking such other action as may be necessary to place before shareholders for a vote a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board;

C. Awarding to Kraft Heinz restitution from Defendants, and each of them, and ordering disgorgement of all profits, benefits and other compensation obtained by the Defendants;

D. Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

E. Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: May 9, 2019                    **THE WEISER LAW FIRM, P.C.**


                                       *s/ James M. Ficaro*
                                       Robert B. Weiser
                                       Brett D. Stecker
                                       James M. Ficaro
                                       22 Cassatt Avenue
                                       Berwyn, PA 19312
                                       Telephone: (610) 225-2677
                                       Facsimile: (610) 408-8062
                                       rw@weiserlawfirm.com
                                       bds@weiserlawfirm.com
                                       jmf@weiserlawfirm.com

                                       **RM LAW, P.C.**
                                       Richard A. Maniskas
                                       1055 Westlakes Dr., Ste. 300
                                       Berwyn, PA 19312
                                       Telephone: 484-324-6800
                                       rmaniskas@rmclasslaw.com

                                       *Counsel for Plaintiff*

## VERIFICATION

I, Vladimir Gusinsky, Trustee for the Vladimir Gusinsky Revocable Trust, under penalty of perjury, state as follows:

Vladimir Gusinsky Revocable Trust is the Plaintiff in the above-captioned action. As its Trustee, I have read the foregoing Complaint and authorized its filing on behalf of Vladimir Gusinsky Revocable Trust. Based upon the investigation of my counsel, the allegations in the Complaint are true to the best of my knowledge, information and belief.

DATED: _5 / 7 / 2 0 1 9_____

_____
Vladimir Gusinsky, Trustee for Vladimir
Gusinsky Revocable Trust